UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-24048-BLOOM/Elfenbein

**SKIP BRAVER**, *et al.*,

     Plaintiffs,

v.

**DEREK WACHOB**, *et al.*,

     Defendants.

_____/

## ORDER ON PLAINTIFFS' ORAL MOTION FOR SANCTIONS

**THIS CAUSE** is before the Court on Plaintiffs Skip Braver and Chad Braver's Oral Motion for Sanctions ("Motion for Sanctions"), ECF No. [182], against Defendant Derek Wachob ("Wachob"). The Motion for Sanctions stems from Wachob's violation of the Court's Order to appear in Miami for his deposition no later than May 23, 2025. *See* ECF No. [138]; ECF No. [151]; ECF No. [160]; ECF No. [165]. Plaintiffs argue that Wachob's failure to appear for his deposition in violation of the Court's order has exposed him to the "gamut" of sanctions available under Federal Rule of Civil Procedure 37, including a finding of civil contempt, the entry of default judgment, and the award of Plaintiffs' costs and attorney's fees. *See* ECF No. [166]; Fed. R. Civ. P. 37(a)(5)(A), (b)(2)(A). For the reasons explained below, Plaintiffs' Motion for Sanctions, **ECF No. [182]**, is **GRANTED in part and DENIED WITHOUT PREJUDICE in part.**

## I.    BACKGROUND

On October 21, 2024, Plaintiffs filed a complaint against Wachob and Global Source Recycling Company, LLC alleging financial fraud through claims including conversion, breach of

contract, and securities fraud.[1]  *See generally* ECF No. [1].  On May 12, 2025, the Court held a hearing on several discovery disputes between the Parties.  *See* ECF No. [138].  During that hearing, the Court ordered Wachob "to appear for his deposition in Miami no later than May 23, 2025."  *See* ECF No. [138]; ECF No. [151].  The Parties thereafter scheduled Wachob's deposition to occur on May 21, 2025, but Wachob failed to appear.  *See* ECF Nos. [160] and [160-3].

Because Wachob failed to comply with the Court's order, the Court issued an Order to Show Cause requiring Wachob to appear in person in Miami for an evidentiary hearing to explain "why he should not be held in civil contempt."  *See* ECF No. [165].  The Court held that hearing on May 29, 2025 (the "Hearing").[2]  *See* ECF No. [165]; ECF No. [170].  At the Hearing, Plaintiffs orally made the Motion for Sanctions under Rule 37.  *See* ECF No. [170].  In the Motion, Plaintiffs asked the Court to hold Wachob in civil contempt, to enter default judgment against him, and to award Plaintiffs the costs and attorney's fees they incurred for the failed May 21 deposition and for having to make the Motion for Sanctions.  *See* ECF No. [170].  They argued case law makes clear that failure to appear for a properly noticed deposition after being court-ordered to do so exposes the offending party to the gamut of sanctions available under the Rules, including the relief they requested.  *See* Fed. R. Civ. P. 37(a)(5)(A), (b)(2)(A).  During the Hearing, Plaintiffs' counsel called Wachob to testify under oath about the reasons he did not appear for his deposition and about his ability to appear.  *See* ECF No. [170].  Wachob testified as follows.

**A.  Wachob's testimony**

Wachob knew his deposition had previously been scheduled for May 8, 2025, but he did

---

[1] Plaintiffs have since amended their complaint twice to, among other things, add four more Defendants, *see* ECF No. [74]; ECF No. [142], but those amendments are not relevant here.

[2] At the same Hearing, the Court also heard argument on defense counsel's Motion to Withdraw, which it resolved in a separate Order.  *See* ECF No. [171].

not appear on that date because he had a medical condition that prevented him from traveling.  He explained that he has a blood disorder that causes him to have "three or four days of seizures" when his "blood level gets low" and that he started experiencing seizures on May 6, 2025.[3] Wachob acknowledged he knew about the May 8 deposition on May 2, 2025, when Wachob's counsel wrote to tell Plaintiffs' counsel Wachob could not attend the deposition due to a medical appointment on May 8 (not because of a medical condition that prevented travel).  When Plaintiffs' counsel asked Wachob to explain the discrepancy, Wachob said he could be off on the dates.  But he reiterated that he both had a medical appointment scheduled on May 8 and started experiencing seizures on May 6.

When Plaintiffs' counsel asked if Wachob kept the medical appointment on May 8, Wachob did not answer directly.  Instead, he said he went to a different doctor for the seizures, though he did not specify the date that appointment occurred.  Upon questioning, Wachob could not remember the doctor's name but said he could get that information.  He explained that the doctor gave him an infusion of "all kinds of proteins and vitamins and different things to try to help eliminate the seizures" but admitted he did not receive the infusion on May 8.

Wachob also knew the Court had ordered him to appear for his deposition on or before May 23, 2025, but he did not appear by that date because his pregnant 26-year-old daughter "started having bleeding" on May 20.  Because the doctor was "very concerned," Wachob chose to stay with his daughter instead of traveling to Miami for his May 21 deposition, though he admitted that was "maybe not the best choice."  Wachob did not know why his lawyers did not show up for the May 21 deposition, but he assumed it was because he did not attend.  He also did not know why his lawyers did not alert Plaintiffs' counsel in advance that he was not going to

---

[3] When describing Wachob's testimony and the other aspects of the Hearing, the Court quotes from a draft transcript the court reporter provided because the official transcript is not yet in the record.

appear for the May 21 deposition.  Wachob did not remember the name of the doctor who delivered his granddaughter by emergency Caesarian section on May 24, but he did remember the doctor was male.  He said the doctor's name was in his daughter's medical records, which were eventually admitted into evidence as Defense Exhibit 1.[4]

When Plaintiffs' counsel asked Wachob why he had not offered to travel to Miami for his deposition between May 24 (the date his daughter gave birth) and May 29 (the date of the Hearing), he said he assumed the Court would set a new deposition date during the Hearing.  Plaintiffs' counsel asked if he could depose Wachob the next day, May 30, but Wachob said he had "another court situation" in an Oklahoma bankruptcy action on May 30.  Wachob added that he was supposed to be in the Oklahoma bankruptcy court at 2:00 p.m. on the day of the Hearing, but that the bankruptcy court allowed him to appear remotely to attend the Hearing.  He did not know whether he could appear remotely in the Oklahoma bankruptcy action on May 30.

On cross-examination, Wachob explained there was some confusion in his mind about whether the May 8 deposition would occur because Plaintiffs, at one point, asked that it be rescheduled, so he assumed it was "off" and the Parties would pick a different date.  Wachob also testified he did not have "the clearest mind" during the week of the May 21 deposition because of his daughter's medical situation — particularly the amount of blood she lost and the fact that her due date was still 30 days away — caused "a little bit of upheaval in the family."  He recalled that his "intent was to come" to the May 21 deposition, but he was concerned he would not be able to concentrate on the deposition because his mind was "strictly" on his daughter and granddaughter's wellbeing, as there was the possibility that either or both could die.

---

[4] The Court ordered defense counsel to file Defense Exhibit 1 on the docket so that the record would be complete, noting that Wachob could request to file the sensitive medical information under seal.  Defense Exhibit 1 has not yet been filed on the docket, but the Court reviewed it at the Hearing.  It contains Wachob's daughter's medical records from her doctor and hospital visits between May 21 and May 25.

CASE NO. 24-CV-24048-BLOOM/Elfenbein

After defense counsel asked Wachob to clarify the timeline of his daughter's medical situation, he noted she began having vaginal bleeding on May 20, went to her regular maternity doctor to have the bleeding checked on May 21, was admitted to the hospital on May 22, gave birth on May 24, and went home from the hospital on May 25.  He noted that he is very close with his daughter, who lives with him, and that his granddaughter went to intensive care after her birth. Thankfully, however, Wachob testified that it now "looks like everything is going to be fine," so the medical situation should not be an impediment to him attending his deposition.  During a short recess, Wachob checked his schedule and determined he was available for his deposition on June 4, 5, 10, 11, and 12.

On redirect, Wachob noted that he took his daughter to the doctor on May 21 but did not go into the exam room; instead, he waited in the car while his wife accompanied her inside.  He also explained that he planned to travel to the May 21 deposition on one of his private planes, either a Mustang or a CJ3.  When his daughter's medical situation began, he planned to ask if the deposition could be rescheduled for May 22 or May 23, but because "things progressed and got worse," he could not "take the chance on leaving."  Wachob did not recall exactly when he made the decision not to travel to Florida for the May 21 deposition, but when Plaintiffs' counsel suggested he never intended to appear, Wachob reiterated that he indeed intended to appear. Because of the "turmoil" with his daughter, he did not instruct his lawyers to alert Plaintiffs' counsel that he would be missing the May 21 deposition.

As for how he traveled to Miami for the Hearing, Wachob noted he flew on a private CJ3 plane belonging to someone else and left at 9:00 p.m. the night before.  When Plaintiffs' counsel asked if Wachob could have left at 9:00 p.m. on May 20 to arrive in time for his deposition on May 21, he said he could not have done so without chartering a plane because his own planes were

unavailable that day. After the Court asked him several times whether he had made any arrangements before May 21 to charter a plane or have a pilot available, Wachob finally answered that he had arranged with his "flight department" to have a plane ready to bring him to Miami on the night of May 20.

Wachob also reiterated that he could not stay in Miami the next day, May 30, for his deposition because he was "on standby" in case he needed to attend a bankruptcy hearing in Oklahoma, but he admitted that no hearing had been scheduled as of yet and that he would not know if he was needed there until after the 2:00 p.m. on May 29.  And he confirmed that Plaintiffs had not told him the May 8 deposition was cancelled.

At the close of redirect, the Court questioned Wachob.  He could not name the blood condition that gives him seizures, though he testified he has had it for ten years.  He also could not name the doctor who treats him for that condition, though he testified the doctor is in Miami and last treated him eight months earlier.  He noted he had seen other doctors at the Cleveland Clinic and the Mayo Clinic for his condition, he but could not recall their names either.  And he still could not give the name of the doctor who performed the infusion he received on May 8.  Nor had he brought any medical records to substantiate that he received treatment around May 6 for a condition that prevented him from attending the deposition scheduled for May 8.  As to the May 21 deposition, Wachob confirmed that he had not told his lawyers he would not be attending because of "the whole ordeal" with his daughter.

On additional redirect, Wachob admitted Plaintiff Skip Braver had been in the treatment room with him "a couple times" when he was seen for his blood condition in Miami.  When asked by Plaintiffs' counsel if the doctor had diagnosed him with epilepsy, Wachob said two doctors had different theories and had not "specifically" said epilepsy.  Wachob also clarified that the infusion

he received in early May was given by a doctor at a medical clinic and that he paid cash for the treatment instead of using insurance.

**B. Counsel's Arguments**

After Wachob's testimony, the Court invited counsel to argue their positions on the Motion for Sanctions. Plaintiffs argued that Wachob had willfully failed to show up for his deposition on both May 8 and May 21. They argued defense counsel told them the May 8 absence was for a medical appointment, but that turned out to be only a clinic visit for a non-prescription vitamin infusion. As to the May 21 absence, they argued there was no written corroboration for Wachob's testimony that his daughter's medical situation began on May 20, as her medical records show she was not admitted to the hospital until May 22. They also argued her medical situation was less serious than Wachob portrayed it to be, as he did not "even bother to get out of the car" at her doctor appointment on May 21 and she was initially sent home from the hospital on May 22. Finally, they argued they had tried to depose Wachob five times, and he failed to show up each time, at least once in violation of a Court order.

Defense counsel first confirmed that none of Wachob's lawyers appeared for the May 8 deposition because they "intuited" he was not going to show up. Had Wachob appeared, however, one of his lawyers was "in the vicinity" and would have gone to defend the deposition. Defense counsel could not clarify the timeline of Wachob's medical appointments and treatment between May 2 and May 8, but he noted Wachob thought the May 8 deposition was to be rescheduled at Plaintiffs' request and, in any event, had not been court-ordered to appear on that date. The Court then interjected to remind defense counsel that the only reason the May 8 deposition was not court ordered is because defense counsel represented to the Court in an earlier discovery hearing that Wachob would show up for it, so a formal order was unnecessary.

As to the May 21 deposition, defense counsel argued Wachob did not attend because of his daughter's medical situation.  But when the Court noted the medical records in Defense Exhibit 1 demonstrate Wachob's daughter reported to a nurse that her symptoms began on May 21 — not on May 20 as Wachob testified — defense counsel could not explain the discrepancy.  Defense counsel confirmed Wachob had not alerted them before his May 21 deposition that his daughter was having a medical emergency or that he would not be appearing as ordered.  Defense counsel also confirmed that no efforts had been made to reschedule the deposition for May 22 or May 23 to comply with the Court's Order.  Finally, defense counsel agreed with the Court there was nothing currently scheduled in the Oklahoma bankruptcy case to prevent Wachob from staying in Miami to attend his deposition on May 30.  He argued the case was not yet at a point where a default judgment was appropriate but admitted that another order requiring Wachob to appear for his deposition, with "stated consequences" if he does not appear, was appropriate.

## II.   LEGAL STANDARDS

### A.  Civil Contempt

"Contempt of court is the disregard of judicial authority."  *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 180 F.R.D. 461, 465 (S.D. Fla. 1998); *see also Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (defining "civil contempt" as the "willful disregard of the authority" of the court).  When a party fails to comply with an order of the court, the court "may use the remedy of a citation of contempt to enforce" that order.  *See Combs v. Ryan's Coal Co.*, 785 F.2d 970, 980 (11th Cir. 1986); *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (noting that civil contempt proceedings are brought to enforce a court order that requires a party to act in some defined manner).  A court's power to use a citation of civil contempt to compel compliance with its directives comes both from its inherent authority, *see Int'l Union, United Mine*

*Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (noting courts "have embraced an inherent contempt authority as a power necessary to the exercise of all others" (citations and quotation marks omitted)); *Popular Bank*, 180 F.R.D. at 465 ("The court's power to enforce compliance with its lawful orders is inherent."), and from the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 70(e) (noting a court may hold a "disobedient party in contempt"); Fed. R. Civ. P. 37(b)(2)(A)(vii) (allowing a court to treat "as contempt of court the failure to obey any" discovery "order except an order to submit to a physical or mental examination").  Either way, "[c]ivil contempt proceedings may be employed to coerce a contemnor into compliance with the court's order and to compensate a complainant for losses sustained."[5] *Popular Bank*, 180 F.R.D. at 465.

"A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992).  "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Ga. Power Co.*, 484 F.3d at 1291 (emphasis omitted).  "Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply." *Wellington Precious Metals*, 950 F.2d at 1529.  That is because, "[w]here compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *United*

---

[5] The animating purpose behind a contempt sanction, and "the character of the relief itself," determine whether it is civil or criminal. *See Bagwell*, 512 U.S. at 828–29 (quotation marks omitted). A "contempt sanction is considered civil if it is remedial, and for the benefit of the complainant." *Id.* at 827 (quotation marks omitted); *see also id.* (defining "civil contempt sanctions" as "those penalties designed to compel future compliance with a court order," which "are considered to be coercive and avoidable through obedience"); *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006).  In contrast, a contempt sanction is criminal if it "is punitive, to vindicate the authority of the court." *See Bagwell*, 512 U.S. at 828 (quotation marks omitted).

*States v. Rylander*, 460 U.S. 752, 757 (1983); *see also Combs*, 785 F.2d at 983 ("[I]t is improper to impose contempt sanctions of any sort if the alleged contemnor is not able to satisfy the court's directives.").

To "succeed on the inability defense, the alleged contemnor must go beyond a mere assertion of inability and establish that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid." *Wellington Precious Metals*, 950 F.2d at 1529 (citation and quotation marks omitted).  Indeed, "the alleged contemnor" must "produce detailed evidence specifically explaining why he cannot comply." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 740 (11th Cir. 2006).   "[E]vasive and incomplete testimony will not satisfy" the alleged contemnor's "burden of production." *See Wellington Precious Metals*, 950 F.2d at 1530. This is a "high standard" that courts "construe . . . strictly." *See Combs*, 785 F.2d at 984.  "Even if the efforts" a party "did make were substantial, diligent or in good faith, the fact that he did not make all reasonable efforts" would prevent him from "rebut[ting] the prima facie showing of contempt." *See id.* (cleaned up).

If "the alleged contemnor" makes "a sufficient showing," however, the "burden shifts back to the initiating party" to prove "ability to comply." *Wellington Precious Metals*, 950 F.2d at 1529; *see also Combs*, 785 F.2d at 984 (noting that the party seeking to show contempt "retains the ultimate burden of proof").   The court's "focus in a civil contempt proceeding is not on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue." *Ga. Power Co.*, 484 F.3d at 1291 (quotation marks omitted).  While due process requires "a hearing in which the alleged contemnor may explain why the court should not make a contempt finding," *see Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991), that hearing can be an ordinary civil proceeding,

*see Serra Chevrolet*, 446 F.3d at 1147 ("Civil contempt may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard"); *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010) (noting the alleged contemnor can "explain his noncompliance at a show cause hearing").

If, after hearing from the alleged contemnor, the court decides to impose civil contempt sanctions, they may be "compensatory" or "coercive." *See Watkins*, 943 F.2d at 1304. When a court chooses "to impose sanctions designed to ensure compliance, the sanctions cannot be any greater than necessary to ensure such compliance." *Id.* "When fashioning a sanction to secure compliance, a district court should consider the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* (quotation marks omitted).

## B.  Rule 37 Sanctions for Discovery Violations

"Discovery is one of the working tools of the legal profession."  *Hickman v. Taylor*, 329 U.S. 495, 515 (1947) (Jackson, J., concurring).  That is true because "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *See id.* at 507 (majority opinion).  Because of discovery's importance in litigation, *see Phillips v. Ins. Co. of N. Am.*, 633 F.2d 1165, 1168 (5th Cir. Unit B 1981) ("We have consistently regarded the discovery process as a serious matter and will continue to do so." (citations omitted)), the Federal Rules of Civil Procedure provide several mechanisms a party can use to force compliance with unfulfilled discovery obligations.

Relevant here, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1); *see also Hickman*, 329 U.S. at 507 ("To that end, either party may compel the other to disgorge whatever facts he has in

his possession."). This principle applies to all sorts of discovery devices, including depositions. *See* Fed. R. Civ. P. 37(a)(3)(B)(i)–(ii) (allowing a "party seeking discovery" to "move for an order compelling an answer, designation, production, or inspection" if "a deponent fails to answer a question asked under Rule 30" or "a corporation or other entity fails to make a designation under Rule 30(b)(6)"); Fed. R. Civ. P. 30(a)(1) ("A party may, by oral questions, depose any person, including a party."). And it applies both to complete failures to respond and to "evasive or incomplete" responses. *See* Fed. R. Civ. P. 37(a)(4) (noting an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond").

If a party moves to compel discovery and either "the motion is granted" or "the disclosure or requested discovery is provided after the motion was filed," the Rules provide for fee shifting to compensate the party for the effort it expended on procuring the discovery it was due. In fact, in that situation, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The "court must not order this payment" in only three enumerated scenarios. *See* Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii) (including if the movant did not first attempt "in good faith to obtain the disclosure or discovery without court action"; if the "nondisclosure, response, or objection was substantially justified"; or if "other circumstances make an award of expenses unjust").

Finally, if a party does not obey the court's order compelling discovery, the court "may issue further just orders," including more severe sanctions, to coerce compliance. *See* Fed. R. Civ. P. 37(b)(2)(A). These more severe sanctions include "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing

party claims"; "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; "striking pleadings in whole or in part"; "staying further proceedings until the order is obeyed"; "dismissing the action or proceeding in whole or in part"; "rendering a default judgment against the disobedient party"; and "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii). The court also "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to obey the discovery order, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(b)(2)(C) (noting the court must award reasonable expenses "[i]nstead of or in addition to" the remedies in Rule 37(b)(2)(A)(i)–(vii)).

### C. When Entering Default Under Rule 37(b)(2) is Appropriate

"Rule 37 is designed to protect basic institutional values: 'Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process.'" *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 129 (S.D. Fla. 1987) (Marcus, J.) (quoting *Aztec Steel Co. v. Florida Steel Corp.*, 691 F.2d at 480, 482 (11th Cir. 1982)). "As a general matter, the imposition of sanctions for failure to provide discovery rests with the sound discretion of the district court." *Stansell v. Revolutionary Armed Forces of Colombia*, 120 F.4th 754, 763 (11th Cir. 2024) (quotation marks omitted). But "sanctions of last resort — such as dismissals or default judgments — are appropriate only when less drastic sanctions would not ensure compliance with the court's orders." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1378 (11th Cir. 2024) (quotation marks omitted); *see also Stansell*, 120 F.4th at 763.

"[R]esort to this ultimate sanction under Rule 37 serves two important goals: to penalize

and to deter conduct which is in flagrant disregard of the rules of discovery." *Telectron, Inc.*, 116 F.R.D. at 129–30; *see also National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). "Because of its severe consequences, a default judgment sanction requires a willful or bad faith failure to obey a discovery order." *Stansell*, 120 F.4th at 763 (quotation marks omitted). "Before the ultimate sanction of default judgment may be entered, this Court must make the following findings: (1) that Defendant acted willfully or in bad faith; (2) that Plaintiff was prejudiced by Defendant's conduct; and (3) that lesser sanctions would not serve the punishment-and-deterrence goals set forth in *National Hockey League* and its progeny." *Telectron, Inc.*, 116 F.R.D. at 131; *see also Wouters v. Martin Cnty.*, 9 F.3d 924, 934 (11th Cir. 1993); *United States v. Certain Real Prop. Located at Route 1*, 126 F.3d 1314, 1317 (11th Cir. 1997) (requiring the violation of a discovery order). It must also be satisfied that "there is a sufficient basis in the pleadings for the judgment entered." *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quotation marks omitted); *Thornton v. Hosp. Mgmt. Assocs., Inc.*, 787 F. App'x 634, 639 (11th Cir. 2019) (explaining that, before imposing default judgment as a sanction, the district court must determine whether the complaint sufficiently states a claim for relief).

## III.   DISCUSSION

As explained above, in their Oral Motion for Sanctions, Plaintiffs ask the Court to: (1) hold Wachob in civil contempt for violating the Court's order to appear for his deposition by May 23, 2025, *see* Fed. R. Civ. P. 37(b)(2)(A)(vii); (2) enter default judgment against him because he willfully violated the Court's order, *see* Fed. R. Civ. P. 37(b)(2)(A)(vi); and (3) order him to pay the reasonable expenses Plaintiffs incurred for the failed May 21 deposition and associated with filing the Motion for Sanctions, *see* Fed. R. Civ. P. 37(a)(5)(A).  The Court takes each request in turn.

### A.  Civil Contempt

Plaintiffs contend Wachob willfully failed to show up for his deposition on both May 8 and May 21 despite having the ability to do so.  They note that his failure to appear on May 21 (or by May 23) violated the Court's clear order requiring him to attend and argue that his explanations do not excuse his non-appearance because the medical issues were not emergencies on the actual deposition dates.  And they argue they have tried to depose Wachob five times without success, which has prejudiced their case.  For those reasons, Plaintiffs ask the Court to hold Wachob in civil contempt pursuant to Rule 37(b)(2)(A)(vii).  Defense counsel contends Wachob thought the May 8 deposition had been rescheduled and justifiably did not attend the May 21 deposition (or reschedule it to occur by May 23) because of his daughter's medical situation.  As noted at the Hearing, the Court agrees with Plaintiffs.

To support a finding of civil contempt, Plaintiffs must prove by clear and convincing evidence that: (1) the Court's order requiring Wachob to appear in Miami by May 23 for his deposition is valid, lawful, clear, and unambiguous; (2) Wachob violated that order; and (3) Wachob had the ability to comply with that order.  *See Wellington Precious Metals, Inc.*, 950 F.2d at 1529; *Ga. Power Co.*, 484 F.3d at 1291.  There is no dispute about the first and second prongs of that test.  Wachob does not challenge the validity, lawfulness, or clarity of the Court's order requiring him to appear in Miami by May 23 for his deposition, nor does he contend that he complied with that order by appearing.  Instead, Wachob testified at the Hearing that he knew about the Court's order requiring him to appear in Miami by May 23 for his deposition.  He did not express any kind of misunderstanding about what the order said or what it required.  Despite knowing about and understanding the order, he did not attend his scheduled May 21 deposition and made no efforts to reschedule it to occur by May 23.

The dispute here centers on the third prong of the test: whether Wachob had the ability to appear in Miami by May 23 for his deposition.  Wachob can prevent the imposition of civil contempt by showing an inability to comply with the Court's order despite, in good faith, making all reasonable efforts to satisfy that order.  *See Wellington Precious Metals*, 950 F.2d at 1529; *Rylander*, 460 U.S. at 757; *Combs*, 785 F.2d at 983.  But to do so, Wachob must produce detailed evidence specifically explaining why he cannot comply.  *See Parker*, 468 F.3d at 740.  This is a high standard the Court must construe strictly, so Wachob will not meet it if he does not show he made all reasonable efforts to appear in Miami by May 23 for his deposition, even if the efforts he made were substantial, diligent, or in good faith.  *See Combs*, 785 F.2d at 984.

Wachob attempted to prove his inability to appear in Miami by May 23 for his deposition through his testimony at the Hearing.  *See Watkins*, 943 F.2d at 1304 (noting alleged contemnors can explain why the court should not make a contempt finding at a hearing); *Serra Chevrolet*, 446 F.3d at 1147 ("Civil contempt may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard"); *Thomas*, 594 F.3d at 821 (noting alleged contemnors can explain noncompliance at a show cause hearing).  And indeed, as catalogued above, Wachob repeatedly testified that his daughter's medical situation, which involved vaginal bleeding and the early delivery of her child by Caesarian section, kept him from attending his deposition in Miami by May 23.  Specifically, Wachob testified that his daughter's bleeding began on May 20, the medical emergency did not end until she delivered her child on May 24, and he worried about his ability to concentrate on a deposition because his mind was "strictly" on his daughter and granddaughter's wellbeing, as there was the possibility that either or both could die.

The Court agrees that serious medical situations involving a party's child and soon-to-be-born grandchild could result in that party's inability to comply with a court order requiring travel

to a different State.  So had Wachob's testimony been credible, it might have satisfied his burden to show he was unable to appear in Miami by May 23 for his deposition.  But having observed Wachob's testimony and demeanor, and having compared his testimony with the written medical records Wachob provided in Defense Exhibit 1 to substantiate it, the Court finds it was not credible. *See, e.g.*, *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (valuing the ability to "personally" observe testimony); *Viehman v. Schweiker*, 679 F.2d 223, 227–28 (11th Cir. 1982) (valuing the "ability to view first-hand the demeanor of the witness").

While there are no specific criteria for assessing credibility, factfinders often look to a witness's demeanor, tone, body language, candor, and responsiveness; the inherent plausibility or implausibility of the witness's testimony; the consistency of the witness's testimony with other record evidence; any inaccuracies in the witness's testimony; and the context and atmosphere within which the witness testifies.  *See League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 938 (11th Cir. 2023) (crediting a trial court's determination, based on a witness's "'face and body language,' over Zoom, that the witness was lying"); *Reiterman v. Abid*, 26 F.4th 1226, 1234–35 (11th Cir. 2022) (noting that "variations in demeanor and tone of voice . . . bear so heavily on the listener's understanding of and belief in what is said" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1245–46 (11th Cir. 2007); *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1231 (11th Cir. 2006); *Rice v. Collins*, 546 U.S. 333, 343 (2006) (Breyer, J., concurring) (noting "the factors that underlie credibility: demeanor, context, and atmosphere").  In the civil contempt context, evasive and incomplete testimony will not satisfy an alleged contemnor's burden.  *See Wellington Precious Metals*, 950 F.2d at 1530.

Here, the Court finds that Wachob's testimony was vague, evasive, incomplete, and

17

contradicted by the written medical records in Defense Exhibit 1. First, Wachob could not (or would not) answer basic questions about his own medical appointments, providers, treatments, and conditions. Specifically, Wachob did not remember (or, at least, did not disclose): (1) the exact date his seizures began in early May; (2) the name of the condition, which he has had for ten years, that causes those seizures; (3) the name of the doctors who treat him for his seizures; (4) what kind of medical appointment was scheduled to occur on May 8; (5) the exact date he received an infusion to treat his seizures in early May; (6) what exactly was in the infusion he received; and (7) when he made the decision not to travel to Florida for the May 21 deposition. Given the unlikelihood that Wachob does not know those details about his own health and healthcare, the Court finds his overall testimony vague, evasive, and incomplete.

Second, Wachob was particularly evasive when the Court questioned him about whether he had made any arrangements before May 21 to charter a plane or have a pilot available to attend his deposition in Miami on that date. The Court had to ask Wachob several times before he finally answered that he had arranged with his "flight department" to have a plane ready to bring him to Miami on the night of May 20. Wachob offered no information about what kind of plane he had arranged, when he had arranged it, or who could verify those arrangements, even after the Court suggested he must have "some kind of communications presumably with this flight department to have a chartered plane ready . . . on the evening of May 20." Nor did Wachob provide any written corroboration of those arrangements, despite acknowledging that some kind of communication with his flight department exists.

Third, the written medical records in Defense Exhibit 1 do not corroborate — indeed, they contradict — Wachob's testimony about the timeline of his daughter's medical situation between May 20 and May 25. The medical records indicate his daughter was not admitted to the hospital

with pregnancy complications until May 22 at 4:10 p.m. Central time, the day after Wachob's scheduled deposition.  They also indicate his daughter told the hospital nurse that her symptoms, which included abdominal tightening, pelvic pain, and increased discharge, began on May 21, which contradicts Wachob's testimony that she began bleeding on May 20 and that he made the decision not to appear for his May 21 deposition because of that bleeding.  In fact, the medical records indicate Wachob's daughter specifically denied she was experiencing any vaginal bleeding when the nurse asked her about it on May 22.  Based on those discrepancies, the Court credits the medical records but finds Wachob's testimony, which does not align with those records, not credible.  Because Wachob's testimony was not credible, the Court does not credit his testimony that he was unable to appear in Miami by May 23 for his deposition.  For that reason, Wachob has not shown through detailed evidence why he could not comply with the order.  *See Parker*, 468 F.3d at 740; *Wellington Precious Metals*, 950 F.2d at 1529; *Rylander*, 460 U.S. at 757; *Combs*, 785 F.2d at 983.

Even if the Court had found Wachob's testimony credible, however, it still would not find that Wachob had met his high burden to make *all* reasonable efforts to comply with the Court's order to appear in Miami by May 23 for his deposition — and substantial, diligent, or good faith efforts are not enough.  *See Combs*, 785 F.2d at 984.  That is because, as Wachob himself admitted, he still had two days after his failed May 21 deposition during which he could have arranged to be in Miami for his deposition and comply with the Court's order.  Despite that remaining time, Wachob never notified his counsel about the medical issues with his daughter and never asked them to reschedule his deposition.  Wachob did not make reasonable efforts on May 21, May 22, or May 23 to comply with the Court's order, nor did his counsel alert the Court that a complication had arisen and Wachob needed additional time.  Put simply, Wachob did not take any steps to

comply with the Court's order, let alone all reasonable steps.

In sum, the Court finds Plaintiffs have proven by clear and convincing evidence that the Court's order that Wachob appear in Miami by May 23 for his deposition is valid, lawful, clear, and unambiguous; Wachob violated that order; and Wachob had the ability to comply with the order but chose not to do so. *See Wellington Precious Metals, Inc.*, 950 F.2d at 1529; *Ga. Power Co.*, 484 F.3d at 1291. The Court further finds that Wachob's testimony at the Hearing was not credible. Finally, the Court finds that, even if Wachob's testimony had been credible, Wachob has not met his high burden of showing he took all reasonable steps to comply with the Court's order. *See Parker*, 468 F.3d at 740; *Wellington Precious Metals*, 950 F.2d at 1529; *Rylander*, 460 U.S. at 757; *Combs*, 785 F.2d at 983. Accordingly, Plaintiffs' Motion for Sanctions, **ECF No. [182]**, is **GRANTED** as it relates to their request for the sanction of civil contempt. *See* Fed. R. Civ. P. 37(b)(2)(A)(vii). As ordered at the Hearing, Wachob **SHALL** appear for his deposition in Miami on **May 30, 2025**, and if Wachob fails to appear for that deposition, he will be **ASSESSED** a coercive fine of $500 per day until he appears. As the Court directly warned Wachob at the Hearing, Wachob's failure to appear at the May 30 deposition may result in the Court imposing more serious sanctions, including the entry of default judgment against him. *See* Fed. R. Civ. P. 37(b)(2)(A)(vi).

### B. Default Judgment

Plaintiffs also note that, because Wachob's violation of the Court's order was willful, the Court can enter default judgment against him pursuant to Rule 37(b)(2)(A)(vi). They argue default judgment is appropriate here because Wachob has repeatedly failed to attend duly noticed depositions, which has twice prompted the Court to order him to appear, so they still have not been

able to depose him even after noticing his deposition five times.[6]  And they highlight that, for the May 21 deposition, Wachob did not "even bother to tell his attorneys" he was not going to attend. Defense counsel argues that default is not yet appropriate and that, instead, the Court should once again order Wachob to appear for his deposition "with stated consequences if he" does not.  As explained at the Hearing, the Court agrees with Defendant.

Before the Court can impose the ultimate sanction of entering default judgment against Wachob, it must find that: (1) Wachob violated a discovery order such that Rule 37(b)(2)(A) applies and had notice that the violation may result in severe sanctions; (2) Wachob acted willfully or in bad faith; (3) Wachob's conduct prejudiced Plaintiffs; (4) lesser sanctions would not be adequate; and (5) Plaintiffs' complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *See Telectron, Inc.*, 116 F.R.D. at 131; *Wouters*, 9 F.3d at 934; *Route 1*, 126 F.3d at 1317; *Surtain*, 789 F.3d at 1245; *Thornton*, 787 F. App'x at 639; Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).  Because the test is conjunctive, the failure to meet any prong means the Court cannot enter default judgment.  And the Court finds that the fourth prong — lesser sanctions would not be adequate — is not satisfied here.

Although Wachob has repeatedly failed to attend duly noticed depositions, prejudicing Plaintiffs in the process, he appeared in Miami for the Hearing when the Court ordered him to do so.  Wachob's compliance with the Court's order to appear in person for the Hearing indicates that he is not entirely unable to be compelled.  For that reason, the Court finds that a lesser sanction would coerce Wachob to attend his deposition (and, by doing so, cure any prejudice to Plaintiffs).

---

[6] One of those orders is the Court's order at issue here requiring his attendance at his deposition by May 23. *See* ECF No. [151] at 3. Judge Bloom previously entered another order after the Parties filed a joint motion agreeing to reschedule a January 14, 2025 deposition to February 10, 2025 to "accommodate" Wachob, who was allegedly injured in a "vehicular accident on December 25," 2024. *See* ECF No. [50]; ECF No. [51].

Accordingly, Plaintiffs' Motion for Sanctions, **ECF No. [182]**, is **DENIED WITHOUT PREJUDICE** as it relates to their request for the sanction of default judgment.  *See* Fed. R. Civ. P. 37(b)(2)(A)(vi).

As to what lesser sanction is appropriate, as explained at the Hearing, the Court ordered Wachob to appear in Miami for his deposition on May 30, 2025.  The Court included in that order a coercive monetary sanction: after May 30, Wachob would be fined $500 each day until he appeared for his deposition.  The Court also warned Wachob that, if he failed to appear as ordered on May 30, he would be subject to more severe sanctions at that time.  Those more severe sanctions could include default judgment.  And the Court advised Plaintiffs that they could renew their request for default judgment at a later point in the litigation if circumstances support it.

### C.  Attorney's Fees and Costs

Finally, Plaintiffs ask the Court to order Wachob to pay the reasonable expenses Plaintiffs incurred for the failed May 21 deposition and the associated Motion for Sanctions.  *See* Fed. R. Civ. P. 37(a)(5)(A).  They argue that, because the Court granted their Motion for Sanctions as it relates to their request for civil contempt, Rule 37 requires the Court to award them their "reasonable expenses" in making that Motion unless one of three exceptions applies.  *See* Fed. R. Civ. P. 37(a)(5)(A). And Plaintiffs argue that no exception applies.  *See* Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).  The Court agrees.

As explained above, Rule 37 provides that if a party moves to compel discovery and the motion is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *See* Fed. R. Civ. P. 37(a)(5)(A). The language of Rule 37(a)(5)(A) is mandatory, not

permissive, so the Court is required to grant the movant its reasonable expenses unless one of three exceptions applies. *See* Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).  More specifically, "the court must not order this payment if" the "movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; the "opposing party's nondisclosure, response, or objection was substantially justified"; or "other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).

The Court finds that none of the three exceptions apply here.  Plaintiffs did not file their Motion for Sanctions requesting that Wachob be held in civil contempt without first attempting in good faith to obtain his deposition without court action.  As already thoroughly explained, Plaintiffs tried repeatedly to procure Wachob's deposition through normal deposition notices, and they went so far as to request a discovery hearing and ask the Court to order Wachob to appear for his deposition before filing the Motion for Sanctions.  Nor were Wachob's repeated failures to appear for his duly noticed deposition substantially justified, as evidenced by the Court's order requiring him to appear and by the finding of civil contempt above.

Finally, no other circumstances make an award of expenses unjust.  So far, Wachob has proven to be consistently nonresponsive to discovery.  Along with his failure to appear for his deposition, Wachob has also failed to comply with discovery orders related to Plaintiffs' written discovery requests and has even failed to respond to his own counsel's attempts to secure his compliance with the Court's orders.  As a result, the Court finds an award of attorney's fees under Rule 37 is warranted.

Accordingly, Plaintiffs' Motion for Sanctions, **ECF No. [182]**, is **GRANTED** as it relates to their request for the sanction of attorney's fees and costs.  *See* Fed. R. Civ. P. 37(a)(5)(A). Before the Court can award attorney's fees and costs, however, it needs additional information.

CASE NO. 24-CV-24048-BLOOM/Elfenbein

**No later than June 23, 2025,** Plaintiffs' counsel **SHALL** file an affidavit detailing: (1) the cost of the court reporter for the failed deposition on May 21; (2) any additional costs associated with the failed deposition on May 21; (3) Plaintiffs' counsel's hourly rate; (4) the amount of attorney time required to travel to the failed deposition on May 21; (5) the amount of attorney time required to attend the failed deposition on May 21; (6) the amount of attorney time required to prepare the Notice of Hearing for the Motion for Sanctions; (7) the amount of attorney time required to travel to and from the Hearing on the Motion for Sanctions; and (8) the amount of attorney time required to attend the Hearing on the Motion for Sanctions.

## IV.    CONCLUSION

For the reasons explained above, Plaintiffs' Motion for Sanctions, **ECF No. [182]**, is **GRANTED in part and DENIED WITHOUT PREJUDICE in part**, as follows:

1. Plaintiffs' request for the sanction of civil contempt is **GRANTED**.  Defendant Wachob is **HELD IN CIVIL CONTEMPT** for violating the Court's Order to appear in Miami for his deposition by May 23, 2025.  *See* ECF No. [151] at 3; Fed. R. Civ. P. 37(b)(2)(A)(vii).

   a. As ordered at the Hearing, Wachob must appear for his deposition in Miami on May 30, 2025.

   b. If Wachob fails to appear for his May 30 deposition, he will be **ASSESSED** a coercive fine of $500 per day until he appears.

   c. The Court **WARNS** Wachob that failure to appear at the May 30 deposition may result in the Court imposing more serious sanctions, including the entry of default judgment against him.  *See* Fed. R. Civ. P. 37(b)(2)(A)(vi).

2. Plaintiffs' request for the sanction of attorney's fees and costs is **GRANTED**.  *See* Fed.

R. Civ. P. 37(a)(5)(A).

    a.  Defendant Wachob **SHALL PAY** the reasonable expenses Plaintiffs incurred because of Wachob's failure to appear for his deposition on May 21, 2025, including Plaintiffs' attorney's fees, the cost of the court reporter, and any additional costs.

    b.  Defendant Wachob **SHALL PAY** Plaintiffs' reasonable expenses incurred in making the Motion for Sanctions, including Plaintiffs' attorney's fees.

    c.  **No later than June 23, 2025**, Plaintiffs **SHALL** file an affidavit detailing the above expenses, including:

        i.  The cost of the court reporter for the failed deposition on May 21;

        ii.  Any additional costs associated with the failed deposition on May 21;

        iii.  Plaintiffs' counsel's hourly rate;

        iv.  The amount of attorney time required to

            1.  travel to the failed deposition on May 21;

            2.  attend the failed deposition on May 21;

            3.  prepare the Notice of Hearing for the Motion for Sanctions;

            4.  travel to and from the Hearing on the Motion for Sanctions; and

            5.  attend the Hearing on the Motion for Sanctions.

3.  Plaintiffs' request for the sanction of default judgment is **DENIED WITHOUT PREJUDICE**. *See* Fed. R. Civ. P. 37(b)(2)(A)(vi). Plaintiffs may renew their request for default judgment at a later stage in the litigation, if appropriate.

CASE NO. 24-CV-24048-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers in Miami, Florida on June 13, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record

26